OPINION
{¶ 1} William Seal ("Seal") appeals the July 7, 2003 judgment entry of the Mentor Municipal Court denying his motion to suppress. For the reasons set forth below, we affirm the decision of the trial court in this matter.
 {¶ 2} On May 4, 2003, Bennie Ritchie ("Ritchie") was riding his motorcycle in Mentor when he was involved in a traffic accident. After the accident, Ritchie's motorcycle was moved from the road to a nearby gas station by his friends. After the police arrived at the scene, an officer instructed the crowd of people surrounding the motorcycle that the motorcycle was not to be removed.
 {¶ 3} Soon thereafter, the officers noticed that the motorcycle had been removed from the gas station. Officer John Miller ("Officer Miller") observed a group of motorcycles leaving the area. Officer Miller proceeded after the group and subsequently caught up with them at a stop light near the entrance ramp to State Route 2. After determining that none of the motorcycles in the group where Ritchie's motorcycle, Officer Miller proceeded east on Route 2.
 {¶ 4} Officer Miller subsequently observed Ritchie's motorcycle traveling eastbound on Route 2. Officer Miller activated his overhead lights and stopped the motorcycle. Officer Miller ordered the driver, later identified as Seal, to approach the police vehicle. The passenger, later identified as Heather Kiraly ("Kiraly"), was instructed to remain by the motorcycle. As Seal approached Officer Miller, Officer Miller ordered Seal to place his hands behind his back, to which Seal complied. After grabbing a hold of Seal's wrists, Officer Miller asked Seal if he had any weapons. Seal answered in the affirmative and made a move towards the location of the weapon. Fearing that Seal was attempting to grab the weapon, Officer Miller immediately handcuffed Seal and conducted a frisk. After discovering a pocket knife in Seal's pocket, Officer Miller placed Seal in the police vehicle.
 {¶ 5} Another officer arrived on the scene. At that time, Kiraly was placed in the second officer's vehicle.
 {¶ 6} After Officer Miller mirandized Seal, he questioned Seal. In response to Officer Miller's inquiry into Seal's purpose for removing the motorcycle from the scene of the accident, Seal stated that Ritchie's girlfriend instructed him to take the motorcycle back to Ritchie's residence.
 {¶ 7} Throughout this entire confrontation, Officer Miller smelled a strong odor of alcohol. Officer Miller also observed that Seal's eyes were bloodshot and glassy. Officer Miller also noticed that Seal's speech was slurred.
 {¶ 8} Based upon these observations, Officer Miller removed Seal from the police vehicle in order to conduct field sobriety tests. Officer Miller first conducted the Horizontal Gaze Nystagmus Test ("HGN test"). Officer Miller observed that Seal had all six clues that indicate intoxication.
 {¶ 9} Officer Miller then had Seal perform the One-Leg-Stand test. Since Seal was unable to perform the test with his right leg extended straight as the result of an injury, Seal performed the test with his right leg slightly bent. Twice during this test, Seal needed to place his leg on the ground for stability. Moreover, when counting to thirty as requested, Seal skipped 14. Seal also used his arms for balance during the test. Seal's results again indicated intoxication.
 {¶ 10} Seal next performed the Walk-and-Turn test. Other than beginning the test early, Seal satisfactorily performed the test.
 {¶ 11} Based upon his observations of Seal and Seal's performance on the HGN test and One-Leg-Stand test, Officer Miller arrested Seal for driving under the influence. Seal subsequently pleaded not guilty to the charge. On June 26, 2003, Seal filed a motion to suppress. The trial court conducted a hearing on the motion on July 7, 2003. On that same day, the trial court denied Seal's motion to suppress.
 {¶ 12} Subsequently, Seal pleaded no contest to the charge. On September 19, 2003, Seal was sentenced to 180 days, with 165 days suspended.
 {¶ 13} Seal timely appealed. Seal's sentence was stayed pending his appeal. In his appeal, Seal raises the following assignment of error:
 {¶ 14} "The trial court erred to the prejudice of the defendant-appellant in overruling his motion to suppress."
 {¶ 15} In his sole assignment of error, Seal argues that his behavior was "manifestly innocent" and, thus, his "initial arrest" was not based upon probable cause. In making this argument, Seal claims that, soon after the initial stop and as he approached Officer Miller, Officer Miller placed him under arrest for grand theft auto. Seal also argues that Officer Miller did not have probable cause to arrest Seal for driving under the influence when the charge merely was based on the odor of alcohol and an admission to drinking. In support of this argument, Seal claims that the field sobriety tests were not admissible since they were not strictly administered.
 {¶ 16} The trial court acts as trier of fact at a suppression hearing and must weigh the evidence and judge the credibility of the witnesses. State v. Hill, 75 Ohio St.3d 195, 208,1996-Ohio-222; Ravenna v. Nethken, 11th Dist. No. 2001-P-0040, 2002-Ohio-3129, at ¶ 13, citing State v. Mills (1992),62 Ohio St.3d 357, 366. Since the trial court is in the best position to resolve the factual issues, an appellate court is bound to accept the trial court's factual determinations as long as they are supported by competent and credible evidence. Nethken,
2002-Ohio-3129, at ¶ 13 (citations omitted). Once the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts. State v. Stiles, 11th Dist. No. 2002-A-0078, 2003-Ohio-5535, at ¶ 11.
 {¶ 17} In this case, although Seal testified that he initially was arrested for grand theft auto soon after the stop, Officer Miller testified that, at no time, did he arrest Seal for grand theft auto. Officer Miller testified that the impetus for the stop of Seal was obstruction of justice for removing the motorcycle from the scene of the accident. Officer Miller also testified that Seal was not under arrest when he was handcuffed and placed in the police vehicle, but "detained." Moreover, Officer Miller testified that while in the police vehicle, Seal overheard dispatch reference grand theft auto involving another matter. Finally, Seal was never charged with grand theft auto. Granting the trial court its due deference in weighing the evidence and judging the credibility of the witnesses, we find that the trial court's factual determinations were supported by competent and credible evidence.
 {¶ 18} Since the trial court's factual determinations are supported by competent and credible evidence, we are bound to accept these factual findings as accurate. We now must "independently determine as a matter of law whether the applicable legal standard has been satisfied." See State v.Burrows, 11th Dist. No. 2000-T-0089, 2002-Ohio-1961, at ¶ 25, citing State v. Retherford (1994), 93 Ohio App.3d 586, 592.
 {¶ 19} Stopping a vehicle and detaining its occupants is a seizure within the meaning of the Fourth Amendment. Delaware v.Prouse (1979), 440 U.S. 648, 653, citing United States v.Martinez-Fuerte (1976), 428 U.S. 543, 556-558. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." The Fourth Amendment is enforceable against the states through the Due Process Clause of the Fourteenth Amendment. Mapp v.Ohio (1961), 367 U.S. 643, 655.
 {¶ 20} To justify an investigative stop, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Terry v. Ohio (1968), 392 U.S. 1, 21. Reasonable suspicion must be viewed in light of the totality of the circumstances. State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus. "An inarticulate hunch or suspicion is not enough. The officer must have a reasonable belief and specific facts upon which a reasonable suspicion could be based that appellant was violating or about to violate the law." State v. Dickinson (Mar. 12, 1993), 11th Dist. No. 92-L-086, 1993 Ohio App. LEXIS 1428, at *4 (citations omitted).
 {¶ 21} "[A]n officer may not expand the investigative scope of the detention beyond that which is reasonably necessary to effectuate the purposes of the initial stop unless any new or expanded investigation is supported by a reasonable, articulable suspicion that some further criminal activity is afoot." Statev. Vanderhoff (1995), 106 Ohio App.3d, 21, 26, quoting State v.Retherford, 93 Ohio App.3d at 600; see, also, State v.Waldroup (1995), 100 Ohio App.3d 508, 513, citing State v.Myers (1990), 63 Ohio App.3d 765, 771 ("If during the scope of the initial stop an officer encounters additional specific and articulable facts which give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, the officer may detain the vehicle and driver for as long as the new articulable and reasonable suspicion continues.").
 {¶ 22} In this case, based upon the removal of the motorcycle from the scene of the accident and Officer Miller's observance of Seal operating the motorcycle, Officer Miller had a reasonable suspicion that Seal was obstructing justice in order to effectuate the initial stop of Seal. During his investigation of the potential obstruction of justice, Officer Miller observed several indicators of intoxication, including an odor of alcohol, bloodshot and glassy eyes, and slurred speech. Although some of the indicators standing alone do not conclusively indicate intoxication, viewed in light of the totality of the circumstances, these indicators provided Officer Miller with a reasonable, articulable suspicion that Seal was engaged in further criminal activity, specifically driving under the influence, to justify Officer Miller's expanded investigation beyond the purposes of the initial stop. See State v. Evans
(1998), 127 Ohio App.3d 56, 63 n2.
 {¶ 23} During this expanded investigation, Officer Miller had Seal perform various field sobriety tests. Officer Miller's initial observations, i.e. the odor of alcohol, bloodshot and watery eyes, and slurred speech, combined with Seal's results from the HGN test provided Officer Miller with probable cause to arrest Seal for driving under the influence.[1] See Statev. Homan, 89 Ohio St.3d 421, 427, 2000-Ohio-212 ("[P]robable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of [the field sobriety] tests. The totality of the facts and circumstances[, including the defendant's red and glassy eyes and an odor of alcohol,] can support a finding of probable cause to arrest even where no field sobriety tests were administered or where * * * the test results must be excluded for lack of strict compliance."); see, also, State v. Seymour, 4th Dist. No. 01CA6, 2001-Ohio-2561, 2001 Ohio App. LEXIS 5697, at *15 (holding that an officer has probable cause to arrest a suspect for driving under the influence when the officer observes an odor of alcohol, bloodshot and glassy eyes, and impaired speech).
 {¶ 24} Since Officer Miller possessed a reasonable suspicion to conduct an expanded investigation beyond the purposes of the initial stop and since there was probable cause to arrest Seal for driving under the influence, the trial court did not err in denying Seal's motion to suppress. See Id.
 {¶ 25} For the foregoing reasons, Seal's sole assignment of error is without merit. The decision of the Mentor Municipal Court is affirmed.
O'Neill, J., Rice, J., concur.
[1] Although Seal argues that the results of the field sobriety tests are inadmissible because they were not strictly administered, it is evident from Officer Miller's testimony that the HGN test was strictly administered. Thus, the results of this test were admissible. See State v. Homan, 89 Ohio St.3d 421,2000-Ohio-212, paragraph one of the syllabus; State v. Bresson
(1990), 51 Ohio St.3d 123, syllabus.
It is also evident from Officer Miller's testimony that the One-Leg-Stand test was not strictly administered. However, in denying his motion to suppress, the trial court did not rely on the results of this test in finding that Officer Miller had probable cause to arrest Seal for driving under the influence. We agree with the trial court that there was probable cause to arrest Seal without considering the results of this test. We, therefore, do not need to address Seal's contention raised in his reply brief that R.C. 4511.19(D)(4)(b)'s relaxation of the strict compliance requirement established in Homan, 89 Ohio St.3d 421, is unconstitutional.