JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Jermaine Bennett, appeals the decision of the Common Pleas Court denying his motion to suppress. For the reasons that follow, we affirm.
 {¶ 2} In March 2005, the Cuyahoga County Grand Jury indicted Bennett on three counts of drug possession, three counts of drug trafficking, one count of possession of criminal tools, one count of having a weapon while under a disability, and one count of carrying a concealed weapon. The indictment arose out of a traffic stop of Bennett's vehicle and the subsequent search of his SUV after a drug-sniffing dog alerted to contraband within the SUV.
 {¶ 3} Bennett filed a motion to suppress, in which he argued that 1) the initial stop of his vehicle was impermissibly based on his race; and 2) the police did not have a reasonable suspicion that the vehicle contained contraband in order to detain it after the traffic stop had been completed.
 {¶ 4} The trial court held an evidentiary hearing regarding Bennett's motion to suppress.
 {¶ 5} At the hearing, police officer Michael Shippitka testified that he is a member of the High Intensity Drug Task Force ("HIDTA"), a multi-jurisdictional task force comprised of officers who patrol the roads to monitor for any type of drug, weapon or terrorist activity.
 {¶ 6} Shippitka testified that he and his partner, police officer Gregory Tinnirello, were working as HIDTA team members on February 14, 2005. They were parked in a patrol car along Interstate-480 at a turnaround. Sometime prior to 8:20 p.m., Shippitka and Tinnirello observed a silver Ford Expedition traveling eastbound on I-480 and bearing what appeared to be a Texas license plate. The officers observed that the rear illumination light for the license plate was not working and, in light of Shippitka's experience and training that Texas is a source state for large amounts of narcotics, they decided to make a traffic stop based upon the lack of rear plate illumination.
 {¶ 7} As Shippitka pulled the patrol car behind the Expedition, he verified that there were no illumination lights on the license plate. He then pulled the vehicle over. Shippitka approached the driver's side of the vehicle and requested the driver's license, registration, and proof of insurance. All of these items were produced. Tinnirello, the "cover officer," stood to the rear of the SUV and looked in the vehicle.
 {¶ 8} Shippitka testified that while speaking with Bennett, he observed an air freshener on the front vent in the vehicle, a small rubber band on the floor, and several cell phones and a $1,000 denomination money wrapper on the center console. Shippitka testified that these items were indicators to him of possible criminal activity. Shippitka testified that, from his training and experience, the air freshener could be used to mask drug odors, small rubber bands such as that on the floor of the SUV were used by drug dealers to package individual packages of drugs, and drug dealers often used one cell phone for business and the other for personal calls. Shippitka testified that the driver, Bennett, had an Ohio driver's license with a local address, but the registration and title to the car were in the name of Craig Tandre, who lived in Texas. Bennett explained to Shippitka that he had purchased the car from Tandre, but had not completed making payments on it, so Tandre had insisted that the title and registration remain in Tandre's name.
 {¶ 9} Shippitka returned to his patrol car to run a records check regarding Bennett. This check indicated that Bennett's license was valid, the car was not stolen, and there were no warrants out for Bennett's arrest. The inquiry did reveal, however, that Bennett had a criminal history involving grand theft and receiving stolen property. Shippitka also ran both Bennett's and Tandre's names through the El Paso Intelligence Center database, which indicated that Bennett had previously been questioned by a Drug Enforcement Agency agent regarding $10,000 in his possession during a trip from Cleveland to Texas and that he had a prior drug arrest. In addition, Tandre had been stopped at the airport by a DEA agent and questioned regarding the large sum of money he was carrying.
 {¶ 10} In light of this information, and the items Officer Shippitka had seen in the SUV, Officer Tinnirello requested that Officer John Porter, another HIDTA member, respond to the scene with his dog.
 {¶ 11} Shippitka returned to the SUV and asked Bennett to exit the vehicle, and Bennett did. Shippitka advised Bennett that he would not be issuing him a citation for the lack of rear license plate illumination violation, but then asked him about some "green vegetable matter" that Tinnirello had observed in the rear cargo area of the car. Bennett walked to the rear of the car and voluntarily opened the hatch and the officers observed what appeared to be grass clippings in the cargo area.
 {¶ 12} Shippitka testified that he also saw a couch with a big hole in it in the cargo area. Bennett told the officers that he had been staying at an extended stay hotel for one month and had been forced to buy the couch after a friend's dog had torn it up. Shippitka found this explanation suspicious, however, because Bennett's driver's license showed a local address and several of the cushions were missing from the couch. Shippitka also observed a tool kit in the wheel well and that the carpet had been pulled away from the trim in the cargo area. In light of these observations, Shippitka thought that the couch might be just a "cover load," and that there might be a compartment in the rear of the vehicle where Bennett was transporting contraband.
 {¶ 13} Shippitka then asked Bennett whether he could search his vehicle, but Bennett refused. Shippitka told Bennett that he was free to leave, but advised him that he would retain the car and that a canine unit would be arriving to sniff the vehicle. Bennett refused Shippitka's offer to call a zone car to transport him to a nearby restaurant where he could call someone to pick him up and remained at the scene.
 {¶ 14} Officer Porter arrived on the scene at approximately 8:45 p.m. After Bennett exited his vehicle, Porter walked his dog around the SUV. Shippitka testified that he did not see the dog alert on the vehicle, but was advised by Porter that it had alerted twice to the front passenger side of the vehicle and once to the rear. In light of the alerts by the dog, Officer Porter then searched the vehicle and found a handgun, drugs and other contraband.
 {¶ 15} The trial court denied Bennett's motion to suppress, and, despite a request by the defense for findings of fact and conclusions of law (and a proffer by the defense of same), denied the motion without findings. After a bench trial, the court found Bennett guilty of all counts and sentenced him to four years incarceration and ordered him to pay a $38,500 fine. Bennett now appeals from the trial court's order denying his motion to suppress.
 {¶ 16} Initially, we note that Crim.R. 12(F) mandates that a trial court "state its essential findings on the record" when "factual issues are involved in determining a motion." Here, in denying the motion to suppress, the trial judge stated only, "motion is denied." The court made no findings of fact and gave no reasons for its ruling. Moreover, despite defense counsel's request for findings and the judge's promise to "reduce it to writing and make findings," the trial court did not do so. Nevertheless, we conclude that the trial court's failure to provide its "essential findings" on the record in this case is not fatal to a review of the trial court's ruling on the motion, because the record provides a sufficient basis to review appellant's assignments of error. See, e.g., State v. Ogletree,
Cuyahoga App. No. 86285, 2006-Ohio-448, at ¶ 15; State v. King
(1999), 136 Ohio App.3d 377, 381.
 {¶ 17} In his first assignment of error, Bennett asserts that the trial court erred in denying his motion to suppress. Essentially he contends that 1) absent probable cause, which was not present here, the police may not detain a vehicle after their investigation of the traffic offense is completed; 2) a drug dog may be used only during a traffic stop, but not after the initial traffic stop is completed; and 3) even if the dog alerted in this case, absent exigent circumstances, which did not exist here, the police were required to obtain a search warrant prior to searching the vehicle. None of Bennett's arguments have merit.
 {¶ 18} Our standard for review of a trial court's judgment regarding a motion to suppress was set forth by this court inState v. Curry (1994), 95 Ohio App.3d 93, as follows:
 {¶ 19} "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard." (Citations omitted.)
 {¶ 20} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures.Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868. A traffic stop by a law enforcement officer must comply with theFourth Amendment's reasonableness requirement. Whren v. United States
(1996), 517 U.S. 806, 116 S.Ct. 1769.
 {¶ 21} A police officer may effect a traffic stop of any motorist for any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct. UnitedStates v. Mesa (C.A.6 1995), 62 F.3d 159, 162. When conducting the stop of a motor vehicle for a traffic violation, an officer may detain the vehicle for a time sufficient to investigate the reason for which the vehicle was initially stopped. State v.Bolden, Preble App. No. CA2003-03-007, 2004-Ohio-184. Generally, the duration of the stop is limited to the time necessary to effectuate the purpose for which the stop was made. Id. This time period includes the time necessary to run a computer check on the driver's license, registration and vehicle plates. See Delawarev. Prouse (1979), 440 U.S. 648, 99 S.Ct. 1391. The detention may continue beyond this time frame, however, when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop. State v. Beltran, Preble App. No. CA2004-11-015,2005-Ohio-4194, at ¶ 16, citing State v. Myers (1990),63 Ohio App.3d 765. See, also, United States v. Hill (C.A.6 1999),195 F.3d 258, 264; Mesa, supra.
 {¶ 22} A lawfully detained vehicle may be subjected during a traffic stop to a canine sniff of the exterior of the vehicle even without the presence of a reasonable suspicion of drug-related activity. Illinois v. Cabelles (2005),543 U.S. 405, 125 S.Ct. 834; United States v. Place (1983),462 U.S. 696, 103 S.Ct. 2637; State v. Rusnal (1997),120 Ohio App.3d 24. However, the police must have a reasonable suspicion that a vehicle contains drugs in order to detain a suspect beyond the time necessary to complete the traffic stop while a drug-trained canine is brought to the scene. State v. Wilkins, Montgomery App. No. 20152, 2004-Ohio-3917, at ¶ 12; Hill, supra.
 {¶ 23} "Reasonable suspicion entails some minimal level of objective justification for making a stop — that is, something more than an inchoate and unparticularized suspicion or `hunch,' but less than the level of suspicion required for probable cause." State v. Jones (1990), 70 Ohio App.3d 554, citingTerry, supra. We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "`through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" Heard, supra, quoting State v.Andrews (1991), 57 Ohio St.3d 86, 87-88. See, also, UnitedStates v. Townsend (2002), 305 F.3d 537.
 {¶ 24} For example, in United States v. Alpert (1987),816 F.2d 958, the Fourth Circuit Court of Appeals upheld the detention of a suspected drug courier's luggage at an airport in order to subject it a canine sniff. The suspect was informed that he was not under arrest and that he was free to leave. In upholding the detention of the luggage, the Fourth Appellate Circuit noted that police officers who suspect criminal activity have authority to make limited intrusions based on less than probable cause on an individual's personal security. The court reasoned that such an intrusion is justifiable because it is substantially less intrusive than a traditional arrest and the interests of crime prevention and detection and officer safety support the intrusion if the police have a reasonable, articulable basis for suspecting criminal activity. The court stated that the duration or brevity of the stop is a key consideration in determining its intrusiveness.
 {¶ 25} Here, Officer Shippitka testified that he and Officer Tinnirello called for a canine sniff of Bennett's vehicle because: 1) Bennett's driver's license showed a local address, but he was driving a vehicle with a Texas license place and the vehicle was registered to a third party; 2) Shippitka knew that Texas is a major source state for illegal drugs; 3) a criminal records check revealed that Bennett had a prior drug arrest and had been questioned recently by a DEA agent about $10,000 in his possession during a trip from Cleveland to Texas; 4) the party to whom the vehicle was registered had similarly been stopped and questioned by a DEA agent at the airport regarding the large sum of money he was carrying; 5) Shippitka had observed an air freshener on the front vent of the vehicle and knew that such air fresheners were used by drug dealers to mask drug odors; 6) Bennett kept both windows of the Expedition down during the entire stop even though it was February; 7) Shippitka observed a rubber band of the sort used to package drugs on the floor of the Expedition; 8) Shippitka observed more than one cell phone in the center console of the vehicle and knew that multiple phones are often used by drug dealers; 9) Shippitka observed a $1,000 denomination money wrapper in the center console; 10) Shippitka saw a tool kit in the wheel well of the rear cargo area and observed that the carpet had been pulled away from the trim in the cargo area, suggesting that there was a hidden compartment for transporting contraband in the rear of the vehicle; 11) Bennett's assertion that he had been staying at an extended stay hotel for one month was suspicious because his driver's license showed a local address; and 12) Bennett's story about the damaged couch he was transporting in the vehicle was suspect because several cushions were missing from it.
 {¶ 26} We find, contrary to Bennett's argument, that under the totality of the circumstances, these facts were sufficient to give Officers Shippitka and Tinnirello reasonable suspicion that Bennett was involved in criminal activity beyond that which prompted the initial stop and, further, that his vehicle likely contained drugs. Accordingly, the officers were justified in detaining Bennett's car for a short time after the initial traffic stop had been completed until the canine sniff could be conducted.
 {¶ 27} Bennett's assertion, in reliance on Caballes, supra, that a dog sniff may take place only during a traffic stop, and not after the stop has been completed, misconstrues the holding in Caballes. In Caballes, the United States Supreme Court considered whether a canine sniff during a lawful traffic stop, where the officers had no reasonable suspicion that the vehicle contained drugs, violated the Fourth Amendment. The Court concluded that the sniff did not infringe on any constitutionally protected interest in privacy, because the sniff would reveal no information other than the location of a substance that no individual has a right to possess. Id. at 410. No mention was made in Caballes of canine sweeps that occur after a lawful traffic stop has ended. As the United States Supreme Court made clear in Hill, supra, however, an officer may detain an individual beyond the reasonable duration of the traffic stop for the purpose of completing his investigation when the officer has a reasonable suspicion the individual is involved in criminal activity other than that which led to the initial stop. Thus, in light of the officers' reasonable suspicion that Bennett was involved in drug activity, we find no fault with the canine's sweep of Bennett's vehicle after the initial traffic stop had concluded.
 {¶ 28} Contrary to Bennett's argument, he was not illegally detained after the traffic stop was completed. He was informed several times that he was free to go, and even that the officers would transport him to a local restaurant where he could call someone for a ride, but he refused the offer and remained on the scene.
 {¶ 29} Likewise, Officer Shippitka's question to Bennett regarding whether he could search his vehicle, a question asked after Shippitka had told him he would not be issuing a citation, did not amount to a seizure of Bennett. "[T]he Constitution does not mandate that a driver, after being lawfully detained, must be released and sent on his way without further questioning once the law enforcement officer determines that the driver has not, in fact, engaged in the particular criminal conduct for which he was temporarily detained. * * * A law enforcement officer does not violate the Fourth Amendment merely by approaching an individual, even where there is not reasonable suspicion that a crime has been committed, and asking him whether he is willing to answer some questions. This includes a request for consent to search the individual's vehicle. And, this consent is not vitiated merely because the valid suspicion of wrongdoing for which an individual has been stopped proves to be unfounded or does not result in prosecution and the individual is free to go before being asked."United States v. Erwin (C.A.6 1998), 155 F.3d 818, 820 and 823. (Citations omitted.)
 {¶ 30} Furthermore, contrary to Bennett's argument, there was no requirement that the police officers obtain a search warrant after the dog alerted to the presence of drugs in the vehicle. "A warrantless search of an automobile is permissible if probable cause exists to believe it contains evidence of a crime. There is probable cause to justify a warrantless search of a vehicle once a properly trained and reliable drug detection dog alerts positively to the presence of drugs." United States v. Perez
(2006), 440 F.3d 363, 374, citing United States v. Ross (1982),456 U.S. 798, 809, 102 S.Ct. 2157, and Hill, supra,195 F.3d at 273. See, also, State v. Carlson (1995), 102 Ohio App.3d 585,600 ("Once a trained drug dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband.") Thus, the officers acted within their authority in searching Bennett's vehicle following the alerts by the dog.
 {¶ 31} Accordingly, the trial court did not err in denying Bennett's motion to suppress.
 {¶ 32} Appellant's first assignment of error is overruled.
 {¶ 33} Bennett's second and third assignments of error state, respectively:
 {¶ 34} "Assuming an `alert' by a properly trained and reliable dog can establish `probable cause' sufficient to justify a search, the reliability of the dog must be established on the record. Since this did not happen here, it follows that the court erred if its denial of the motion was influenced by the belief that an alert was proven to have occurred."
 {¶ 35} "To the extent it can be inferred (from the court's summary ipsi [sic] dixit denial of the motion to suppress) that: (A) the trial judge not only determined that a drug-sniffing dog `alerted,' and to the extent it can likewise be inferred (B) the court found this dog was appropriately qualified to do so, any such rulings would be clearly erroneous and for that reason the denial of the motion cannot survive meaningful scrutiny and must be reversed."
 {¶ 36} In these assignments of error, Bennett argues that the State failed to prove the reliability of the dog which alerted. Bennett's motion to suppress did not challenge the reliability of the dog, however. As the Supreme Court of Ohio made clear inXenia v. Wallace (1988), 37 Ohio St.3d 216, 218, parties challenging the legality of a warrantless search or seizure have the burden of setting forth the grounds upon which they challenge the search or seizure in their motion to suppress:
 {¶ 37} "The prosecutor must know the grounds of the challenge in order to prepare his case, and the court must know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits. Therefore, the defendant must make clear the grounds upon which he challenges the submission of evidence pursuant to a warrantless search or seizure. Failure on the part of the defendant to adequatelyraise the basis of his challenge constitutes a waiver of thatissue on appeal." (Emphasis added.)
 {¶ 38} Bennett did not challenge the reliability of the dog or whether it alerted in his motion to suppress. Accordingly, he has waived these arguments for purpose of appeal.
 {¶ 39} Appellant's second and third assignments of error are overruled.
 {¶ 40} Bennett's fourth assignment of error states:
 {¶ 41} "Assuming in the wake of the alleged alert probable cause to search existed, the absence of exigent circumstances would then be critical, this likewise shows the court erred when she denied the motion."
 {¶ 42} In this assignment of error, Bennett again argues that even if probable cause to search the vehicle existed, because there were no exigent circumstances, the officers were required to obtain a search warrant before searching his vehicle.
 {¶ 43} As previously set forth in our discussion regarding assignment of error one, this argument is without merit.
 {¶ 44} Appellant's fourth assignment of error is therefore overruled.
 {¶ 45} Bennett's fifth assignment of error states:
 {¶ 46} "A trial court's `essential findings' required to be made by Rule 12(F), Rules of Criminal Procedure and Evidence Rule 104(A), as a necessary condition precedent to any ruling that probable cause existed (whether expressed or inferred), as reviewed de novo and will be held to be clearly erroneous where there was no evidence to support such `factual findings.'"
 {¶ 47} In this assignment of error, Bennett argues that because the trial court issued no findings of fact in denying his motion, it must be presumed that the court found, in light of the alert by the drug dog, that probable cause existed to search his vehicle. Bennett again asserts that, because the State did not prove the reliability of the dog, however, there was insufficient evidence from which the trial court could have found probable cause.
 {¶ 48} As noted earlier, Bennett did not dispute the reliability of the dog in his motion to suppress and, therefore, has waived this issue for appeal. Moreover, as set forth in our discussion regarding assignment of error one, it is apparent that the officers validly stopped Bennett for a traffic violation, validly detained his vehicle after the traffic stop had ended so a drug-sniffing dog could be brought to the scene, and validly searched his vehicle, without a warrant, after the drug-sniffing dog alerted three times to the presence of drugs in the vehicle.
 {¶ 49} Appellant's fifth assignment of error is overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., and Karpinski, J., concur.