JOURNAL ENTRY AND OPINION
{¶ 1} After being arrested for operating her vehicle while under the influence of alcohol in violation of R.C.4511.19(A)(1), defendant Tammy Spoonamore filed a motion to suppress evidence on grounds that (1) the arresting officer made an improper, warrantless stop of her vehicle, (2) the arresting officer lacked a reasonable and articulable suspicion to continue her detention after the stop, and (3) the arresting officer conducted an improper warrantless arrest for operating a vehicle while under the influence of alcohol. The court denied the motion and Spoonamore changed her plea to no contest. The court found her guilty, but waived imposition of sentence pending this appeal.
 I {¶ 2} Spoonamore first argues that the court erred by finding that the arresting officer had no basis for making the traffic stop. She argues that the officer's stated reasons for making the stop — that she had failed to drive within a continuous marked lane of traffic — was completely refuted by a videotape admitted into evidence which showed the contrary.
 {¶ 3} The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." The amendment has been extended to seizures of passengers in traffic stops under the rationale that the amendment "protects people, not places." Katz v. United States
(1967), 389 U.S. 347, 351. Using the reasonableness requirement of the amendment, the United States Supreme Court has held that a seizure must be reasonable both at its inception and throughout its duration. See Terry v. Ohio (1968), 392 U.S. 1, 20. A traffic stop is considered to be "analogous" to a Terry stop.Berkemer v. McCarty (1984), 468 U.S. 420, 439. Thus, in order to effect a valid traffic stop, the police need only have a reasonable suspicion that some illegality has occurred or is occurring in order to stop a vehicle to investigate. Id. The basis for this suspicion, however, must be clearly articulable.Terry, 392 U.S. at 21 ("In justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.").
 {¶ 4} The court conducted a hearing on the motion to suppress and heard testimony from the arresting officer. The officer testified that he had been on patrol and noticed a car driven by Spoonamore that kept "drifting off to the right onto the right edge line and a couple times completely over the edge line partially on the shoulder." He then manually activated a video camera mounted in the police car. The officer said that he believed that the videotape would show that Spoonamore drifted to the right a "few more times." On that basis, he stopped her.
 {¶ 5} On cross-examination, the officer was forced to concede that the videotape did not show Spoonamore committing any further infractions. The officer said that he manually turned off the video camera, but continued to follow her. He said that he turned the camera back on again because he "noticed more violations." The videotape does show Spoonamore's car touched the right edge line.
 {¶ 6} The issue is whether these facts demonstrate that the officer had specific and articulable facts which, taken together with rational inferences from those facts, justified the traffic stop. In deciding this issue, we acknowledge that the court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366. Consequently, we must accept the court's findings of fact if they are supported by competent, credible evidence.State v. Fanning (1982), 1 Ohio St.3d 19.[1]
 {¶ 7} The court ruled that "based on the testimony of [the arresting officer] and the videotape, the Court finds that the officer had probable cause, based on the testimony and the video, that he had probable cause to arrest for DUI, so the Motion to Suppress is denied." In a journal entry issued more than three months later, the court nunc pro tunc found that "officer had reasonable and articulable suspicion to stop * * *."
 {¶ 8} The officer cited Spoonamore for violation of Strongsville Codified Ordinance No. 432.08, which states:
 {¶ 9} "Whenever any roadway has been divided into two or more clearly marked lanes for traffic or wherever traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:
 {¶ 10} "(a) A vehicle shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."
 {¶ 11} The police officer testified that despite watching Spoonamore's initial drifting, he did not choose to initiate a stop based on these initial infractions. Instead, he turned on his video camera. After following her for about one minute, 24 seconds, he saw no further infractions. It appears that the camera was turned off for about four minutes. The officer turned the camera on again as he made the traffic stop. During that time, he claimed to have seen her "drift to the right a few more times." The extent of this "drifting" is not readily apparent, although the officer agreed that Spoonamore's vehicle was "touching the right edge line."
 {¶ 12} In Dayton v. Erickson (1996), 76 Ohio St.3d 3,1996-Ohio-431, the syllabus states "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." The question is whether the police officer had reasonable cause to believe that a traffic violation occurred. It does not matter, contrary to Spoonamore's assertions, that the violation was "minor" or "de minimus." Any argument relating to the "minor" nature of a traffic violation necessarily concedes that a violation occurred. This is all thatErickson requires as a predicate for a traffic stop. The very use of the de minimus argument relating to the extent of the violation is self-defeating.
 {¶ 13} To be sure, the videotape did not show proof of the violation. However, the officer's testimony, as believed by the court, sufficiently established that he saw Spoonamore failed to drive within her lane of traffic. This testimony was enough to establish that a violation occurred; hence, there was probable cause. The court, as trier of fact, stated it believed the officer. We have no basis for overturning this factual finding.
 II {¶ 14} Spoonamore next argues that the arresting officer lacked a reasonable and articulable suspicion to continue the detention beyond that needed to cite her for the moving violation.
 {¶ 15} Generally speaking, a traffic stop is limited to the time necessary to effectuate the purpose for which the stop was made, including, for example, the time necessary to run a computer check on the driver's license, registration, and vehicle plates. See Delaware v. Prouse (1979), 440 U.S. 648.
 {¶ 16} However, if during the initial stop the police discover additional articulable facts which give rise to a reasonable suspicion of criminal activity beyond that which caused the initial stop, the police may detain the driver for as long as the new suspicion continues. State v. Robinette (1997),80 Ohio St.3d 234, 1997-Ohio-343, paragraph one of the syllabus;State v. Perry, Preble App. No. CA2004-11-016, 2005-Ohio-6041, at ¶ 13; State v. Seal, Lake App. No. 2003-L-163,2004-Ohio-5938, at ¶ 21.
 {¶ 17} The arresting officer testified that when he approached Spoonamore after making the stop, he noticed her eyes were red and glassy, that her speech sounded slurred and "thick-tongued," and that he detected the odor of alcohol. These have all been held to be sufficient indicia that a driver had been operating a vehicle while under the influence such that a police officer is warranted in making a further detention.Cleveland Heights v. Schwabauer, Cuyahoga App. No. 84249,2005-Ohio-24, at ¶ 14; State v. Wilson, Mahoning App. No. 01 CA 241, 2003-Ohio-1070, at ¶ 20.
 {¶ 18} Spoonamore counters by arguing that the videotape of the traffic stop does not support the arresting officer's belief that she slurred her words. In addition, she argues that the arresting officer did not have her perform field sobriety tests. We cannot verify this claim, but it is of no moment. Even if Spoonamore had not been slurring her words, the arresting officer noted that she had glassy eyes and he detected the odor of alcohol. These indicia were independently sufficient to justify the additional detention.
 {¶ 19} In the end, Spoonamore's complaints appear to be based on her perception that her traffic infractions were too minor — too "de minimus" in her words — to result in a detention that ultimately led to a DUI conviction. The law clearly permits an initial stop when the offender has committed a traffic violation, no matter how minor the driver might believe it to be. An additional detention is likewise warranted when there are articulable facts giving rise to a reasonable suspicion of criminal activity beyond that which prompted the initial stop. Spoonamore's disagreement with the arresting officer's assessment of the gravity of the offenses simply raised a credibility question. The court, acting as trier of fact, decided those questions of credibility adversely to her. We have no basis for overturning the court's factual findings.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Berea Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Frank D. Celebrezze, Jr., P.J., and Sean C. Gallagher, J., concur.
[1] Spoonamore represents that Cleveland v. Sanders, Cuyahoga App. No. 83073, 2004-Ohio-4473, stands for the proposition that this court may review de novo the factual findings a court makes during a suppression hearing. She apparently relies on this language: "[w]hen reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case." Id. at ¶ 16. We read this statement as confirming the well-accepted principle of appellate review that a reviewing court accepts the factual findings by the trial court, but reviews conclusions of law de novo. To the extent that this passage could be interpreted as suggested by Spoonamore, we expressly disapprove it and adhere to the principles of law stated in this opinion.