[Cite as *Cleveland v. Reese*, 2014-Ohio-3587.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 100579

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## LAUREN REESE

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2013 TRC 037304

**BEFORE:** McCormack, J., S. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** August 21, 2014

**ATTORNEY FOR APPELLANT**

Mark A. DeFranco
55 Public Square
Suite 1600
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
Law Director
City of Cleveland

By: Angela Rodriguez
Assistant City Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Lauren Reese, appeals from a judgment of the Cleveland Municipal Court that convicted her of operating a vehicle while under the influence ("OVI"). She claims the police unlawfully detained and arrested her and the field sobriety tests were not administered in substantial compliance with the NHTSA regulations. After a careful review of the record and applicable law, we affirm the judgment of the trial court.

{¶2} On June 22, 2013, Reese was cited for OVI, having a prohibited breath alcohol concentration, failing to wear a seat belt, and violating marked lanes. She filed a motion to suppress evidence. At the suppression hearing, Trooper Hiram Morales, a ten-year veteran with the Ohio State Highway Patrol, testified to the following events.

{¶3} On an early Sunday morning, around 2:00 a.m., a driver on westbound Interstate 90 caught his attention when she passed his patrol vehicle on his right. The driver appeared to be traveling at a speed over the posted speed limit of 60 mph. Trooper Morales could not pace the vehicle to ascertain its speed, because the driver soon moved one lane to the right — without signaling the lane change — and proceeded to exit the highway.

{¶4} Trooper Morales followed the vehicle off the highway and observed that the vehicle traveled over the middle hash mark on the exit ramp. He continued to follow the vehicle traveling northbound on West 117th Street, in another attempt to pace the vehicle. The driver randomly increased and decreased the speed, and as a result, Morales was

unable to establish a speed. He followed the vehicle for a mile, and shortly after the intersection of West 117th Street and Franklin Avenue, the driver turned into the parking lot of a Taco Bell, just when Morales activated his overhead lights.

{¶5} Morales also pulled into the Taco Bell and saw the driver pulling into the drive-through lane. At that point, Morales exited his vehicle and approached the driver, knocking on the window to get the driver's attention. He asked the driver, appellant Lauren Reese, about the traffic violations he observed and asked her to pull her car into the parking lot so as not to block the drive-through lane. Reese moved her vehicle to the parking lot, and Morales asked her for the vehicle's registration, her driver's license, and a proof of insurance. Reese looked for the registration in an envelope, and told the trooper she was unable to find the registration paper, when it was actually on her lap.

{¶6} While waiting for her to find the documents, Morales, standing about one-and-half-foot away from the vehicle's window, smelled the odor of alcohol emanating from inside the vehicle — when asked later at the suppression hearing, he testified that "I would say it was a strong order, because I'm not poking my head into the vehicle. I am just standing." Morales asked Reese if she had been drinking alcohol. She denied it. Because of the traffic infractions and the strong odor of alcohol, Morales asked Reese to exit her vehicle for field sobriety tests.

{¶7} Morales, trained to perform field sobriety tests since 2003, first performed the Horizontal Gaze Nystagmus ("HGN") test. He noted six out of six possible clues. There were three clues in each eye — Reese failed to smoothly pursue the stimulus, she

showed distinct nystagmus at maximum deviation, and she exhibited an onset of nystagmus prior to 45 degrees.

{¶8} Before the Walk-and-Turn test, Trooper Morales asked Reese on more than one occasion to remove her high heels, which appeared to be at least four inches, but she declined. She broke away from the starting position once or twice while listening to the instructions, and began the test before being told to do so. She failed to touch heel-to-toe at steps two, five, seven, and nine on the first part of the test, and at steps one, two, five, six, seven, and eight on the second part of the test. In all, she displayed three of eight possible clues.

{¶9} During the One-Leg-Stand test, Reese swayed from side to side, raised her arms for balancing for more than six inches, and put her foot down twice, displaying two out of four possible clues.

{¶10} Based on his observation of the traffic infractions, his interactions with her, and the field sobriety tests, Trooper Morales determined Reese was impaired and placed her under arrest for OVI. He transported her to the Linndale Police Department for a breath alcohol concentration ("BAC") test, which showed a reading of .169, in excess of the legal limit.

{¶11} After the suppression hearing, the trial court denied Reese's motion. Reese entered a no contest plea, and the remaining charges were nolled. She was convicted of OVI, her second in six years, and the trial court imposed 180 days of jail time with 170 days suspended, two years of active probation, 90 days of automobile immobilization,

five days of MADD meetings, a $525 fine, and a license suspension with driving privileges.

{¶12} On appeal, Reese argues the trial court should have granted her motion to suppress the evidence. An appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Preztak*, 181 Ohio App.3d 106, 2009-Ohio-621, 907 N.E.2d 1254 (8th Dist.), ¶ 22. Once we accept the factual findings as true, however, "'we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard.'" *Id.*, quoting *State v. Lloyd*, 126 Ohio App.3d 95, 709 N.E.2d 913 (7th Dist.1998).

{¶13} Our review of this case reflects that Trooper Morales stopped Reese's vehicle for minor traffic infractions and, while investigating her traffic violations, detected a strong odor of alcohol and decided to conduct field sobriety tests. This court, in *State v. Bennett*, 8th Dist. Cuyahoga No. 86962, 2006-Ohio-4274, ¶ 21, summarized what a police officer could lawfully do at each stage of a traffic stop:

> A police officer may effect a traffic stop of any motorist for any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct. *United States v. Mesa* (C.A.6 1995), 62 F.3d 159, 162. When conducting the stop of a motor vehicle for a traffic violation, an officer may detain the vehicle for a time sufficient to

investigate the reason for which the vehicle was initially stopped. *State v. Bolden*, Preble App. No. CA2003-03-007, 2004-Ohio-184. Generally, the duration of the stop is limited to the time necessary to effectuate the purpose for which the stop was made. *Id.* This time period includes the time necessary to run a computer check on the driver's license, registration and vehicle plates. *See Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660. The detention may continue beyond this time frame, however, when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop. *State v. Beltran*, Preble App. No. CA2004-11-015, 2005 Ohio 4194, at P 16, citing *State v. Myers* (1990), 63 Ohio App.3d 765, 580 N.E.2d 61. *See, also, United States v. Hill* (C.A.6 1999), 195 F.3d 258, 264; *Mesa, supra*.

**{¶14}** On appeal, Reese does not contest the constitutionality of the trooper's stop of her vehicle. As we stated in *Bennett*, the police may effect a traffic stop for any traffic infraction. Furthermore, as the Supreme Court of Ohio held in *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that

the violator was engaging in more nefarious criminal activity." *Erickson* at syllabus, citing *United States v. Ferguson,* 8 F.3d 385, 391 (6th Cir.1993).

{¶15} Here, the officer observed several traffic infractions by Reese: she was speeding, in his estimate; she failed to use a turn signal to change lanes; and she touched a marked line at the exit ramp. Under the case law authority, a traffic stop is lawful even if the traffic violations are minor, or "de minimis." *See*, *e.g.*, *Strongsville v. Spoonamore*, 8th Dist. Cuyahoga No. 86948, 2006-Ohio-4884, ¶ 12. Therefore, the trooper's stop of Reese's vehicle was lawful, and indeed, Reese does not challenge it on appeal. Rather, Reese raises three assignments of error, which all relate to what transpired after her vehicle was stopped.

{¶16} Under the first assignment of error, Reese argues the police officer illegally expanded the investigative scope of her detention beyond the purpose of the initial detention by investigating her for OVI without reasonable suspicion that her ability to drive was impaired.

**The Duration of Vehicle Stop and Scope of Detention**

{¶17} As we stated in *Bennett*, 8th Dist. Cuyahoga No. 86962, 2006-Ohio-4274, the duration of a vehicle stop is "limited to the time necessary to effectuate the purpose for which the stop was made" and the time period includes the time necessary to run a computer check on the driver's license, registration, and vehicle plates. The detention may continue beyond this time frame, however, "when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which

prompted the initial stop." *See also Spoonamore, supra*, at ¶ 16 ("if during the initial stop the police discover additional articulable facts which give rise to a reasonable suspicion of criminal activity beyond that which caused the initial stop, the police may detain the driver for as long as the new suspicion continues."); *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997), paragraph one of the syllabus; *State v. Perry*, 12th Dist. Preble No. CA2004-11-016, 2005-Ohio-6041, ¶ 13; *State v. Seal*, 11th Dist. Lake No. 2003-L-163, 2004-Ohio-5938, ¶ 21.

{¶18} More specifically, the courts have allowed a police officer to request a motorist to perform field sobriety tests once the officer has stopped the vehicle for some minor traffic offense, when "the request is separately justified by a reasonable suspicion based upon articulable facts that the motorist is intoxicated." *Parma Hts. v. Dedejczyk*, 8th Dist. Cuyahoga No. 97664, 2012-Ohio-3458, ¶ 29, citing *State v. Evans*, 127 Ohio App.3d 56, 62, 711 N.E.2d 761 (11th Dist.1998).

{¶19} In this case, Trooper Morales continued the detention to administer field sobriety tests after he smelled what he considered to be a "strong" odor of alcohol from the driver's window while he stood one and one-half feet from the vehicle's window. "Probable cause is not needed before an officer conducts field sobriety tests. Reasonable suspicion of criminal activity is all that is required to support further investigation." *Columbus v. Anderson*, 74 Ohio App.3d 768, 770, 600 N.E.2d 712 (10th Dist.1991), citing *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988). Moreover, to evaluate the reasonableness of the request for field sobriety tests, we

evaluate "the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *Dedejczyk* at ¶ 29, citing *State v. Dye*, 11th Dist. Portage No. 2001-P-0140, 2002-Ohio-7158, ¶ 18.

{¶20} The Eleventh District, in *Evans*, *supra*, enumerated factors that courts may consider in evaluating whether an officer had reasonable suspicion to administer field sobriety tests under the totality of the circumstances:

> (1) the time of day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given.

*Evans* at fn. 2. "All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably. *Id*.

{¶21} Here, the incident occurred at 2:00 a.m. on a Sunday morning. Reese passed Trooper Morales's vehicle on the right and appeared to the trooper to be speeding. She failed to use a turn signal to change lanes and touched on a marked line at the exit. She arbitrarily sped up and slowed down when traveling on West 117th Street, and

according to the trooper, followed a vehicle ahead of her too closely when both were approaching a red light.   Once her vehicle was stopped, the trooper detected what he described as a "strong" odor coming from the vehicle while Reese denied having consumed any alcohol.   Viewing the totality of circumstances through the eyes of a reasonable and prudent police officer, we believe the trooper reasonably suspected that Reese was driving while intoxicated and he was justified in extending the scope of the detention and requesting Reese to perform the field sobriety tests.   The first assignment of error is without merit.

## Probable Cause to Arrest

{¶22} Under the second assignment, Reese claims the trooper arrested her "without probable cause to believe that her ability to drive was noticeability impaired by the influence of alcohol."

{¶23} Probable cause does not require a proof beyond reasonable doubt.   Rather, in assessing whether the police had probable cause to arrest for OVI, we must determine "whether, at the moment of arrest, the police had information sufficient to cause a prudent person to believe that the suspect was driving under the influence."   *Middleburg Hts. v. Gettings*, 8th Dist. Cuyahoga No. 99556,   2013-Ohio-3536, ¶ 26, citing *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).   "A probable-cause determination is based on the 'totality' of facts and circumstances within a police officer's knowledge." *Gettings* at ¶ 26, citing *State v. Miller*, 117 Ohio App.3d 750, 761, 691 N.E.2d 703 (11th Dist.1997). "While the odor of alcohol, glassy eyes, slurred speech, and other indicia of

alcohol use by a driver are, in and of themselves, insufficient to constitute probable cause to arrest, they are factors to be considered in determining the existence of probable cause." *Gettings* at ¶ 26, citing *Kirtland Hills v. Deir*, 11th Dist. Lake No. 2004-L-005, 2005-Ohio-1563, and *Dedejczyk*, 8th Dist. Cuyahoga No. 97664, 2012-Ohio-3458.

**{¶24}** Here, the record reflects Trooper Morales had sufficient information to cause a prudent person to believe Reese was driving while intoxicated: his estimation of her speeding, two hours past midnight on a Saturday night; various traffic infractions; a strong odor from the vehicle in spite of her denial of drinking any alcohol; and the clues exhibited in the field sobriety tests. Based upon these circumstances, we conclude, as the trial court did, that Trooper Morales had probable cause to arrest Reese for OVI. The second assignment of error is without merit.

## Field Sobriety Tests

**{¶25}** Under the third assignment of error, Reese claims the results of the field sobriety tests cannot be considered in determining probable cause to arrest because the trooper did not administer the HGN, Walk and Turn, and One Leg Stand in substantial compliance of the NHTSA's procedures.

**{¶26}** In order for the results of field sobriety tests to be admissible, the state is not required to show strict compliance with testing standards. However, the state must demonstrate that the officer substantially complied with NHTSA standards. *Dedejczyk,* 8th Dist. Cuyahoga No. 97664, 2012-Ohio-3458, at ¶ 42, citing R.C. 4511.19(D)(4)(b). "The state may demonstrate what the NHTSA standards are through competent

testimony and/or by introducing the applicable portions of the NHTSA manual." *Id.* at ¶ 42, citing *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 28.

{¶27} In this case, Trooper Morales testified at the suppression hearing as to his qualifications and training in field sobriety testing. He also gave detailed testimony regarding how he conducted each test upon Reese and how she performed on each test. In addition, a copy of the applicable portions of the NHTSA manual was admitted as an exhibit.

{¶28} On appeal, despite making a general assertion that the trooper's administration of the field sobriety tests had not been in substantial compliance, Reese does not identify specific areas of lack of substantial compliance. Rather, she claims that the results of the tests cannot be considered because the sobriety tests were not fully captured in the trooper's "dash-cam" video.

{¶29} At the suppression hearing, the dash-cam video of the traffic stop and the field sobriety tests was played for the trial court. However, the camera failed to capture a full view of the field sobriety tests. During the HGN test, the video only shows Trooper Morales. At the suppression hearing, Morales explained that he did not conduct the HGN test directly in front of the video camera because of safety issues. Reese does not refer us to any NHTSA regulations that require the police officer to record the field sobriety tests in a video; nor are we aware of any statutory or case law authority that would exclude the results unless the administration of the tests is recorded.

{¶30} Reese also claims that the trooper should not have permitted her to perform the tests in six-inch heels.  The record shows that the trooper gave Reese several opportunities to remove her shoes for the tests, but she chose not to.  The impropriety that Reese now alleges was a result of her own doing, and therefore, she cannot be heard to complain about it.

{¶31} Reese fails to demonstrate Trooper Morales's administration of the field sobriety tests was not in substantial compliance.  The third assignment of error is without merit.

{¶32} The judgment of the Cleveland Municipal Court is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

SEAN C. GALLAGHER, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR