OPINION
{¶ 1} Appellant, Eduardo Javier Beltran, appeals his conviction for trafficking in cocaine in violation of R.C.2925.03(A)(C)(4)(f). For the reasons set forth below, we overrule appellant's assignment of error and affirm the decision of the trial court.
 {¶ 2} On December 13, 2003, Ohio State Highway Patrol Trooper Shaun Smart was on duty in Preble County, Ohio. Trooper Smart, an Ohio State Highway Patrol Trooper for about 13 years, was seated in his cruiser at a crossover on Interstate 70 in Harrison Township. He observed a black Ford Explorer Sport unmistakably slow down from the posted speed limit of 65 m.p.h. to approximately 55 m.p.h. as it passed by. Trooper Smart pulled out and followed the vehicle.
 {¶ 3} He observed the Explorer being driven directly behind a tractor-trailer truck, following the truck too closely. The Explorer then straddled the center lane line before returning to the right-hand lane. The vehicle then again strayed left of the center line; after it was part-way into the left lane, a turn signal came on and the Explorer passed the semi-truck. At approximately 2:41 p.m., Trooper Smart stopped the Explorer to speak with the driver.
 {¶ 4} The driver identified himself as Eduardo Javier Beltran, appellant herein. Trooper Smart requested and received appellant's license, registration and vehicle information. He began to discuss the several driving violations he had observed with appellant. It became clear that appellant spoke very little English. Trooper Smart described appellant's demeanor as "obviously nervous." Appellant's eye contact was described by Trooper Smart as "moderate," and both of appellant's hands were shaking. Trooper Smart observed that the interior of the Explorer was "very clean," and that the vehicle had no spare tire. There was one small suitcase in the back of the vehicle.
 {¶ 5} Trooper Smart testified at a subsequent suppression hearing that he knew from training and experience that Ford Explorers are often used as drug courier vehicles, and are known to have false compartments built into their floors to hide drugs. If that is the case, typically the spare tire will no longer be in the vehicle because it would either reveal the false compartment or be abnormally placed.
 {¶ 6} Trooper Smart informed appellant that he had committed several traffic violations, i.e., following too close, improper lane change, and turn signal violations. Trooper Smart also told appellant that his rear license tag was improperly obscured by an opaque glass cover. Trooper Smart instructed appellant to exit the Explorer and have a seat in his highway patrol cruiser. The trooper stated that he did this because it was a very cold day and he was having difficulty speaking with appellant. Trooper Smart stated that appellant was "more nervous than normal." Appellant produced a current Arizona driver's license.
 {¶ 7} Once inside the cruiser, appellant advised Trooper Smart that he was traveling from Nogales, Arizona to New York. Appellant gave no specific destination, and stated that he would be in New York for one, two, and then three weeks. He indicated that he had no family or friends in New York, and was going there just "to look."
 {¶ 8} About ten minutes after the stop, Trooper Smart requested a warrant and criminal history check on appellant, and requested that a canine unit report to the scene to sniff appellant's vehicle for drugs. Trooper Smart also contacted the El Paso Intelligence Center ("EPIC"), a national data base which documents all border crossings and all known smuggling activity.
 {¶ 9} Trooper Smart learned from EPIC that the Explorer was registered to appellant, and that it had entered the United States from Mexico on December 10, 2003, three days prior to the stop. However, there was no record that the vehicle had ever entered Mexico from the United States. Trooper Smart testified that every license plate of every vehicle that crosses the border between the United States and Mexico is videotaped and entered into the EPIC data base. He stated that it is unusual for a vehicle to not show an exit from the United States, but show an entry from Mexico. He testified that one of the reasons this may occur is because vehicles are transported across the border to Mexico without proper license plates or with different license plates, altered to transport drugs, and then returned to the United States with different plates.
 {¶ 10} Trooper Smart's training and experience told him that he could be dealing with a drug courier situation. He stated that he was "very suspicious," and believed that appellant might be involved in drug activity.
 {¶ 11} At about 3:23 p.m., 42 minutes after the initial stop occurred, a canine unit arrived on the scene and the dog alerted to the left rear area of the Explorer. A hidden compartment was subsequently discovered in the floor of the vehicle which contained 20 kilos of cocaine wrapped in cellophane.
 {¶ 12} Appellant was indicted for trafficking in cocaine with a major drug offender specification and possession of criminal tools, specifically the Explorer automobile and $1,582 in United States currency that was concealed on his person. Appellant eventually pled no contest to trafficking in cocaine without the specification and was sentenced to three years in prison. He thereafter filed the present appeal asserting the following assignment of error:
 {¶ 13} "THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE APPELLANT'S SUPPRESSION MOTION BECAUSE THE DETENTION OF THE APPELLANT SUBSEQUENT TO THE LAWFUL TRAFFIC STOP EXCEEDED THE TIME NECESSARY TO ISSUE THE APPELLANT A TRAFFIC CITATION AND THE SUBSEQUENT DETENTION BEYOND THAT WHICH WAS REASONABLY NECESSARY WAS NOT SUPPORTED BY ARTICULABLE FACTS GIVING RISE TO REASONABLE SUSPICION THAT THE APPELLANT WAS ENGAGED IN FURTHER CRIMINAL ACTIVITY."
 {¶ 14} Appellant does not argue that the initial traffic stop was unreasonable, nor does he assert error with respect to the events that took place after the canine unit arrived, including the search of his vehicle. The focus of this appeal is on the 42-minute period between the initial traffic stop and the time when the canine unit arrived at the scene of the stop. Appellant contends that this 42-minute detention period was unreasonable, and that the cocaine discovered should have been suppressed.
 {¶ 15} When reviewing the denial of a motion to suppress, we are bound to accept the trial court's findings of fact which are supported by competent, credible evidence. State v. Williams
(1993), 86 Ohio App. 37. Relying on the trial court's factual findings, we must then determine, without deference to the trial court, whether the court applied the appropriate legal standard.State v. Anderson (1995), 100 Ohio App.3d 688.
 {¶ 16} When conducting the stop of a motor vehicle for a traffic violation, an officer may detain the vehicle for a time sufficient to investigate the reasonable, articulable suspicion for which the vehicle was initially stopped. State v. Bolden,
Preble App. No. CA2003-03-007, 2004-Ohio-184. Generally, the duration of the stop is limited to the time necessary to effectuate the purpose for which the stop was made. Id. This time period includes the time necessary to run a computer check on the driver's license, registration, and vehicle plates. See Delawarev. Prouse (1979), 440 U.S. 648, 99 S.Ct. 1391. However, the detention may continue beyond this time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop. State v. Myers (1990), 63 Ohio App.3d 765,Bolden.
 {¶ 17} Additionally, a lawfully detained vehicle may be subjected to a canine sniff of the exterior of the vehicle even without the presence of a reasonable suspicion of drug-related activity. State v. Rusnak (1997), 120 Ohio App.3d 24. Both Ohio courts and the United States Supreme Court have determined that the exterior sniff of a vehicle by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the United States Constitution. UnitedStates v. Place (1983), 462 U.S. 696, 103 S.Ct. 2637; Rusnak.
 {¶ 18} Turning to the facts of the present case, within the first 20 minutes of the stop, Trooper Smart, an experienced Ohio State Highway Patrol Officer, had encountered significant additional facts that gave rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop. Appellant was driving a vehicle that did not have a spare tire, a circumstance which, in Trooper Smart's experience, could mean that the vehicle had been modified to carry drugs. Upon questioning appellant, Trooper Smart learned that appellant was taking a long trip from Nogales, Arizona to New York. Appellant indicated that he intended to be in New York for various periods of time; first one week, then two weeks, then three weeks. There was only one small suitcase in appellant's vehicle.
 {¶ 19} Moreover, after contacting EPIC, Trooper Smart learned that appellant's vehicle had entered the United States from Mexico three days earlier, but that there was no record that it had ever entered Mexico from the United States. Trooper Smart's suspicions were aroused because he knew that drug trafficking organizations sometimes modify vehicles in Mexico to carry large amounts of drugs, and then return the vehicles to the United States with different license plates. It is significant that appellant claimed that he was a resident of Nogales, Arizona, yet the vehicle he was driving had come from Mexico three days earlier with no record that it had ever entered Mexico from the United States.
 {¶ 20} Trooper Smart called for a canine unit approximately ten minutes after he stopped appellant's vehicle. Based upon his observations and the information he had obtained at that point in time and shortly thereafter, Trooper Smart had sufficient additional facts that gave rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop. We find that, under the circumstances, detaining appellant and his vehicle for an additional 20 minutes or so until a canine unit arrived was reasonable and did not violate appellant's constitutional rights.
 {¶ 21} Appellant also argues that the information Trooper Smart obtained from EPIC was inadmissible hearsay. Evid.R. 801(C) defines hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove truth of the matter asserted. In this case, the information Trooper Smart obtained from EPIC was not offered to prove the truth of the information obtained; it was offered as a basis for Trooper Smart's decision to detain appellant until a canine unit could examine appellant's vehicle for drugs.
 {¶ 22} The trial court correctly admitted the information obtained from EPIC not for its truth, but to help explain why Trooper Smart extended the traffic stop to investigate the possibility that appellant was carrying drugs in his vehicle.
 {¶ 23} Based upon the foregoing, the assignment of error is overruled. Judgment affirmed.
Young and Bressler, JJ., concur.