[Cite as *State v. Cruz*, 2014-Ohio-4280.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


STATE OF OHIO,                                :

     Plaintiff-Appellee,                    :

                                               :

   - vs -

                                               :

ARACELI D. CRUZ,                             :

     Defendant-Appellant.              :

CASE NO.   CA2013-10-008

O P I N I O N
9/29/2014


CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 12-CR-11022


Martin P. Votel, Preble County Prosecuting Attorney, Kathryn M. West, 101 East Main Street, Courthouse, 1st Floor, Eaton, Ohio, 45320, for plaintiff-appellee

Elizabeth C. Scott, 120 West Second Street, Suite 603, Dayton, Ohio 45402, for defendant-appellant


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Araceli Cruz, appeals the decision of the Preble County Court of Common Pleas denying her motion to suppress. For the reasons detailed below, we affirm the decision of the trial court.

{¶ 2} On August 7, 2012, Trooper Rich Barrett observed appellant driving a motorhome eastbound on I-70 in Preble County. Trooper Barrett effected a traffic stop

because appellant was operating the motorhome at an unsafe distance behind a semi-truck.

{¶ 3} Upon approaching the vehicle, Trooper Barrett testified that appellant acknowledged the traffic violation, but appeared to be very nervous and her speech was quick and uncomfortable. Trooper Barrett learned that appellant and her passenger, Maridantia Almeida, had rented the motorhome in Nevada, travelled to Sonoma County, California, and then drove across the country making various stops along the way. The two claimed they were involved in the sport of roller derby and had been travelling cross-country to practice with various teams and to learn new techniques and strategies. Appellant further explained that they had previously been to Chicago and were possibly on their way to Dayton to practice with teams there.

{¶ 4} Trooper Barrett then spoke with the passenger, who was the signatory on the rental agreement for the motorhome, and observed that she also appeared very nervous. As the passenger handed Trooper Barrett the rental paperwork for the motorhome, Trooper Barrett testified that he noticed her hands were visibly shaking and her demeanor appeared overly nervous.

{¶ 5} Thereafter, Trooper Barrett returned to his cruiser to review the rental agreement. Trooper Barrett noticed that the motorhome cost $5,000 to rent, which he believed to be unreasonably high for their alleged purpose. Trooper Barrett then radioed Trooper Matt Robinson and his canine unit, Marco, to the scene. In addition, Trooper Barrett radioed information on appellant and the passenger, in order to review their criminal history and to see if they had any outstanding warrants.

{¶ 6} Approximately 14 minutes later, Trooper Robinson and Marco arrived at the scene and performed a canine sniff of the motorhome. While circling the motorhome, Marco alerted and indicated to the odor of narcotics and displayed his trained final response near a

side compartment of the motorhome.[1]  A search of the side compartment located on the exterior of the motorhome did not yield any illegal contraband.  However, a search of the interior of the motorhome yielded 19 boxes of marijuana, weighing a total of 195 pounds.

{¶ 7}   Appellant was subsequently charged with one count of possession of marijuana in violation of R.C. 2925.11(A), a second-degree felony, and possessing criminal tools in violation of R.C. 2923.24(A), a fifth-degree felony.

{¶ 8}   Appellant moved to suppress all evidence obtained from the search of the motorhome.  Following an evidentiary hearing, the trial court denied appellant's motion to suppress.  Thereafter, appellant changed her plea and entered a plea of no contest to the charges. The trial court found appellant guilty as charged and sentenced her to an eight-year prison term for possession of marijuana.  Appellant was also sentenced to a concurrent prison term of twelve months for possession of criminal tools.  Appellant now appeals, raising a single assignment of error for review.

{¶ 9}   Assignment of Error No.1:

{¶ 10} THE TRIAL COURT ERRED BY OVERRULING [APPELLANT'S] MOTION TO SUPPRESS.

{¶ 11} In her sole assignment of error, appellant argues the trial court erred by denying her motion to suppress the contraband found in the motorhome.

{¶ 12} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact.  *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  "When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility." *State v.*

_____

1. Trooper Robinson testified that Marco is trained to alert and indicate to the odor of narcotics and will scratch as his trained final response to alert officers to the presence of narcotics.

*Harsh*, 12th Dist. Madison No. CA2013-07-025, 2014-Ohio-251, ¶ 9.

{¶ 13} When reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Harsh* at ¶ 10.

{¶ 14} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops." *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11. When the police stop a vehicle based on probable cause that a traffic violation has occurred, the stop is reasonable under the Fourth Amendment. *Id.*; *State v. Thomas*, 12th Dist. Warren No. CA2012-10-096, 2013-Ohio-3411, ¶ 19. When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration, and vehicle plates. *State v. Grenoble*, 12th Dist. Preble No. CA2010-09-011, 2011-Ohio-2343, ¶ 28.

{¶ 15} In addition, a lawfully detained vehicle may be subjected to a canine sniff of the vehicle's exterior even without the presence of a reasonable suspicion of drug-related activity. *State v. Dominguez*, 12th Dist. Preble No. CA2011-09-010, 2012-Ohio-4542, ¶ 22; *State v. McCullough*, 12th Dist. Fayette No. CA2013-07-021, 2014-Ohio-1696, ¶ 21. Both Ohio courts and the United States Supreme Court have determined that "the exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the Constitution." *State v.* Casey, 12th Dist. Warren No. CA2013-10-090, 2014-Ohio-2586, ¶ 22. Thus, "a canine sniff of a vehicle may be conducted during the

time period necessary to effectuate the original purpose of the stop." *Dominguez* at ¶ 22. Moreover, if a trained narcotics dog "alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband." *Id.*; *State v. Bolden*, 12th Dist. Preble No. CA2003-03-007, 2004-Ohio-184, ¶ 18.

{¶ 16} In the present case, it is undisputed that Trooper Barrett was permitted to effect a traffic stop after observing appellant following too closely behind a semi-truck in violation of R.C. 4311.34. It is also undisputed that the duration of the traffic stop was not unreasonable and the canine sniff was conducted during the time period necessary to effectuate the original purpose of the stop. *See, e.g., Bolden* at ¶ 17 ("an officer may delay the motorist for a time period sufficient to issue a ticket or a warning"); *State v. Beltran*, 12th Dist. Preble No. CA2004-11-015, 2005-Ohio-4194 (canine sniff 42 minutes after traffic stop was not unconstitutional); *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353 (canine sniff 28 minutes after traffic stop was not unconstitutional).

{¶ 17} Nevertheless, appellant first argues that the officers did not have probable cause to search the interior of the motorhome. In so doing, appellant places much emphasis on the fact that Marco indicated and provided his trained final response (scratching) on the rear passenger side of the vehicle near an external side compartment of the motorhome. However, when officers searched the external side compartment of the motorhome, they discovered no illegal contraband, instead finding that the external side compartment held miscellaneous items, including: a football, tire chocks, and a partially consumed bag of dog food. As a result, appellant maintains that Marco provided a false positive and indicated to the aroma of the dog food, not the marijuana. Therefore, appellant contends that the officers did not have probable cause to continue their search from the exterior side compartment to the interior of the motorhome. In other words, appellant claims that once the officers discovered the dog food in the exterior side compartment, the officers no longer had probable

cause to search the motorhome. We find appellant's argument is without merit.

{¶ 18} Once a drug dog alerts to the presence of drugs, "it gives law enforcement probable cause to search the entire vehicle." *State v. Eatmon*, 4th Dist. Scioto No. 12CA3498, 2013-Ohio-4812, ¶ 17; *State v. Johnson*, 6th Dist. Lucas No. L-06-1035, 2007-Ohio-3961, ¶ 9; *State v. Williams*, 4th Dist. Highland No. 12CA7, 2013-Ohio-594, ¶ 25. Thus, although the external side compartment of the motorhome did not contain any illegal contraband, the officers still had probable cause to search the entire motorhome based on Marco's indication of the odor of narcotics. Appellant's arguments to the contrary are without merit.

{¶ 19} Moreover, the record reflects that Marco indicated to the presence of narcotics and not the aroma of dog food or any other conflict odor. Both Trooper Barrett and Trooper Robinson testified that Marco indicated to the narcotic odor and not the aroma of dog food and described Marco's demeanor as consistent with indicating a narcotic odor.[2] Marco's handler, Trooper Robinson, further explained that Marco was trained to ignore conflict odors, such as dog food and the smell of other animals, when conducting a drug sniff. In addition, the trial court also heard testimony that Marco may have alerted near that area of the motorhome for a number of reasons, including the direction of the wind and the location of the marijuana hidden in the motorhome. Accordingly, the trial court did not err in denying appellant's motion to suppress based on her allegations that Marco provided a false positive. The troopers had probable cause to enter the motorhome and search the vehicle following Marco's indication to the presence of narcotics.

{¶ 20} Next, appellant claims that Marco lacked the requisite training and certification

--------

2. Trooper Barrett testified that Marco exhibits a noticeable change in demeanor when exposed to narcotic odors. For example, Marco demonstrates an increase in respiration, bracketing pattern of a scent cone, a rigid tail wag, and erect ears.

to provide probable cause and was not a reliable canine unit. We disagree.

{¶ 21} In *Florida v. Harris*, ___U.S.___, 133 S.Ct. 1050 (2012), the U.S. Supreme Court addressed how a court should evaluate probable cause based on an alert from a drug-detection dog when the defendant has challenged the dog's reliability. *Id.* at 1053. The court rejected Florida's rigid test that required the state in every case to present exhaustive evidence of reliability in favor of a more flexible, common-sense approach that examines the dog's training. *Id.* In so doing, the court held that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Id.* at 1057. However, the court noted that a defendant "must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses." *Id.*

{¶ 22} The court concluded that a probable-cause hearing considering the reliability of the dog's alert should proceed like any other:

> The court should allow the parties to make their best case, consistent with the usual rules of criminal procedure. And the court should then evaluate the proffered evidence to decide what all the circumstances demonstrate. If the State has produced proof from controlled settings that a dog performs reliably in detecting drugs, and the defendant has not contested that showing, then the court should find probable cause. If, in contrast, the defendant has challenged the State's case (by disputing the reliability of the dog overall or of a particular alert), then the court should weigh the competing evidence.

*Id.* "The question–similar to every inquiry into probable cause–is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Id.*

{¶ 23} Here, the state presented evidence that Trooper Robinson and Marco are certified by Ohio Peace Officer Training Commission (OPOTC) as a canine and handler

team. Trooper Robinson testified that each has undergone extensive training and participate in regular training and recertification. Trooper Robinson and Marco have been through a six-week training course for narcotics detection, as well as certifications for criminal apprehension, tracking, and evidence search. The two also participate in continued monthly training of 16 hours per month.

{¶ 24} The state also presented the testimony of Daniel Bowman who currently trains police service dogs across the country and has more than 30 years of relevant experience. Bowman testified that, based on his calculations, Marco had a 96 percent accuracy rate, including an accuracy rate in excess of 90 percent for marijuana detection.[3] Bowman stated that Marco's accuracy rate is well above the 80 percent threshold required by the OPOTC to maintain certification. Copies of Marco's training records were provided to the court and entered into the record.

{¶ 25} In contrast, appellant presented the testimony of Steven Nicely who testified that Marco was poorly trained and unreliable. Nicely holds himself out as a professional dog trainer and a consultant for police dogs. According to Nicely, Marco was "prompt dependent," which means that the dog relied on the actions of the handler instead of the narcotic odor when conducting a canine sniff. Based on his calculations taken from Marco's training records, Nicely opined that Marco was only 87 percent accurate. Nicely also stated that "one false response is not acceptable" and believed that the training records did not contain enough information to determine if Marco was adequately given discrimination testing with respect to conflict odors.

{¶ 26} Based on our review of the record, we find the trial court did not err in

---

3. Bowman acknowledged that appellant's expert found that Marco's accuracy rate was 87 percent; however, he stated that appellant's expert may have included 5 questionable responses in the calculation. Furthermore, Bowman indicated that appellant's expert clearly did not perform the math correctly because the numbers did not add up.

concluding that Marco was reliable and supplied the officers with probable cause to search the motorhome. Marco's alert, when considered in the totality of the circumstances, would cause a reasonably prudent person to believe that a search of the vehicle would reveal illegal narcotics. *See Harris*, 133 S.Ct. at 1057. The undisputed evidence demonstrates that Trooper Robinson and Marco are certified with OPOTC as a canine unit and have undergone extensive training and recertification training. It is also undisputed that Marco's accuracy rate for the detection of narcotics is well above the requirements to maintain OPOTC certification.

{¶ 27} Although Nicely presented conflicting testimony, the record supports the trial court's decision to discount Nicely's testimony. The record reflects that Nicely has never been certified as a dog trainer and does not currently train drug detecting canine police units. Instead, Nicely stated that he presently trains pets and offers expert testimony throughout the country.[4] Furthermore, Nicely acknowledged that his opinion was based solely on his review of the videotape recording taken from the police cruiser camera and from a review of training records and experience records provided to him. However, Nicely admitted that he has never had any personal interaction with Marco or Trooper Robinson and has never observed any Ohio State Highway Patrol canine training sessions. As such, we find the trial court did not err in concluding that Marco was reliable and his positive indication and alert to the odor of narcotics supplied the officers with probable cause to enter the motorhome.

{¶ 28} In conclusion, we find that the officers had probable cause to search the motorhome and the trial court did not err in denying appellant's motion to suppress. Appellant's sole assignment of error is overruled.

{¶ 29} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.

---

4. Nicely testified that every time he has testified in a case as an expert witness involving the reliability of a dog, he has always found the dog to be unreliable.