[Cite as *State v. Wilson*, 2020-Ohio-3227.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2019-08-141 |
| Appellee, | : | O P I N I O N<br>6/8/2020 |
| | : | |
| - vs - | : | |
| | : | |
| NEKUMA J. WILSON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2017-10-2386

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton Ohio 45011, for appellee

Michele Temmel, 6 S. Second Street, #305, Hamilton, Ohio 45011, for appellant

**M. POWELL, J.**

{¶ 1} Appellant, Nekuma Wilson, appeals a decision of the Butler County Court of Common Pleas denying his motion to suppress.

{¶ 2} In the early hours of May 6, 2018, Fairfield Police Officer Matt Kellum was in his police cruiser, parked in the lot of Michael's Billiard, a pool hall that serves alcohol. The pool hall was open, as was the nearby Rick's Tavern. At approximately 2:08 a.m., Officer

Kellum noticed a vehicle driven by appellant traveling with its headlights turned off. The officer exited the parking lot, followed the vehicle back into the parking lot, and activated his light bar to initiate a traffic stop. Appellant parked the vehicle near Michael's Billiard, exited the vehicle, and started walking toward the pool hall. Officer Kellum called several commands to appellant, ran after him, physically grabbed him, and escorted him back to the scene of the traffic stop. Officer Kellum radioed for backup assistance. He then performed a pat down of appellant's person, handcuffed him, and placed him in the back of his police cruiser. At that time, Officer Kellum intended to charge appellant with failure to comply with the order or signal of a police officer.

{¶ 3} Upon speaking with appellant and explaining the reason for the traffic stop, Officer Kellum discovered that appellant only had an identification card and that his driver's license was suspended. Appellant informed the officer that the vehicle belonged to his parents but was not clear as to whether he had their permission to drive it. Appellant told the officer that his girlfriend, who was then working at Rick's Tavern, had permission to drive the vehicle. Officer Kellum called appellant's father who did not answer. Officer Kellum then called appellant's mother. She indicated that appellant's girlfriend had permission to drive the vehicle but did not indicate that appellant had a similar permission. By then, Sergeant Brad Wolfe had arrived on the scene.

{¶ 4} Officer Kellum intended to have the vehicle towed. Appellant asked the officer if the vehicle could instead be turned over to his girlfriend. Officer Kellum and Sergeant Wolfe both testified that appellant was adamant his girlfriend be allowed to take the vehicle. Sergeant Wolfe thought that appellant's insistence that the vehicle be turned over to his girlfriend was "weird" and indicative that there was something in the vehicle that appellant did not want police to discover. Consequently, Sergeant Wolfe radioed Fairfield Police Officer Sam Larsh and his canine unit, Scout, to the scene. At Officer Kellum's request,

Sergeant Wolfe then went to Rick's Tavern to locate appellant's girlfriend. Upon speaking with appellant's girlfriend, Sergeant Wolfe learned that appellant had been with her at the bar earlier that evening and that he had left to buy cigarettes.

{¶ 5} As Sergeant Wolfe was speaking with appellant's girlfriend in Rick's Tavern and as Officer Kellum continued to interview appellant in an attempt to sort out unsettled issues, Officer Larsh and Scout arrived on the scene. The time was 2:24 a.m., 16 minutes after the traffic stop. Upon speaking briefly with Officer Kellum to get an understanding of the situation, Officer Larsh looked inside the vehicle with his flashlight and observed marijuana shakes around the gearshift. He further observed an open package of Cigarillo Cigars, an item commonly associated with marijuana use.

{¶ 6} Based upon these observations and appellant's earlier behavior of walking away from the vehicle as if he "[did not] want to be a part of whatever [was] inside the vehicle," Officer Larsh walked Scout around the vehicle to perform a canine sniff of the vehicle. At the time, Officer Kellum was in the process of writing citations. Scout alerted to the trunk of the vehicle, prompting a search of the vehicle that yielded a bag of cocaine, a bag of marijuana, and a scale. Following the discovery of the drugs, Officer Kellum advised appellant of his *Miranda* rights and inquired about the drugs. Appellant admitted the drugs belonged to him. The record shows that 25-30 minutes elapsed from the time Officer Kellum initiated the traffic stop to the time contraband was found in the vehicle.

{¶ 7} Appellant was indicted for possession of cocaine along with a forfeiture specification for the $402.75 that was found on appellant's person at the time of his arrest. Appellant moved to suppress all evidence obtained from the search of the vehicle on the ground he was detained longer than constitutionally necessary in order to conduct the canine sniff. Appellant further sought to suppress any statements he had made, arguing that "[s]ince the search of [the] motor vehicle was unconstitutional, any statements obtained

- 3 -

by law enforcement are also unconstitutional."

{¶ 8} A hearing on the motion to suppress was held on September 20, 2018. The state presented an audio/video recording of the May 6, 2018 traffic stop and the testimony of Sergeant Wolfe and Officers Kellum and Larsh. The recording was just over two and one-half hours long, and captured Officer Kellum's interaction with appellant from the time of the initial traffic stop to appellant's arrest. The recording was admitted into evidence.

{¶ 9} Officer Kellum testified he was in the process of writing citations when he was informed drugs had been found in the vehicle. Officer Kellum testified that while a driving-under-the-suspension traffic stop typically takes 10-15 minutes, 25 minutes elapsed from the time he initially made contact with appellant to the time drugs were found in the vehicle. The officer noted that during those 25 minutes, he was given conflicting information, learned that appellant's driver's license was suspended, called appellant's parents, administered a field sobriety test to ensure appellant was not intoxicated, and "basically tried to figure out what I was going to do about what charges I was going to charge [appellant] with." Officer Kellum denied prolonging the writing of the citations in order to give Officer Larsh and his canine unit time to conduct an open-air sniff.

{¶ 10} At the conclusion of the hearing, the trial court denied appellant's motion to suppress. The trial court found that Officer Kellum had sufficient grounds to initiate the traffic stop after he observed appellant drive a vehicle at night with its headlights off. The trial court noted that Officer Kellum's subsequent investigation required the officer to determine who owned the vehicle, who had permission to drive it, whether appellant was operating the vehicle under the influence of alcohol, and the reason for appellant's suspended driver's license, and that this "all took some time." The trial court found that given these circumstances, Officer Kellum "moved along with all the brisk speed and efficiency that he could in that situation." With respect to the canine sniff and subsequent

search of the vehicle, the trial court noted that the contraband was found 30 minutes or less after the traffic stop, and that Officer Kellum did not delay his investigation in order for Officer Larsh and Scout to arrive at the scene. The trial court did not address that portion of appellant's motion seeking to suppress his statements.

{¶ 11} On September 25, 2018, the trial court issued an order denying appellant's motion to suppress. Appellant subsequently entered a no contest plea to cocaine possession and the forfeiture specification as charged and the trial court found him guilty.

{¶ 12} Appellant now appeals, raising two assignments of error.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY OVERRULING HIS MOTION TO SUPPRESS.

{¶ 15} Appellant argues the trial court erred in denying his motion to suppress because he was detained beyond the time frame necessary to issue a citation. Appellant asserts that the traffic stop was unreasonably delayed in order to conduct a canine sniff of the vehicle.

{¶ 16} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038, ¶ 10. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

{¶ 17} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops." *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11. When a police officer stops a vehicle based on probable cause that a traffic violation has occurred, the stop is reasonable under the Fourth Amendment. *Id.*

{¶ 18} When detaining a motorist for a traffic violation, a police officer may delay the motorist for a period of time sufficient to issue a ticket or a warning and to perform routine procedures such as a computer check on the motorist's driver's license, registration, and vehicle plates. *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 12; *Rodriguez v. United States*, 575 U.S. 348, 355, 135 S.Ct. 1609 (2015) (ordinary inquiries incident to a traffic stop involve checking the driver's license, determining whether there are outstanding warrants against the motorist, and inspecting the vehicle's registration and proof of insurance). In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation. *Batchili* at ¶ 12; *State v. Blatchford*, 12th Dist. Preble No. CA2015-12-023, 2016-Ohio-8456, ¶ 27.

{¶ 19} It is well settled that a canine sniff by a trained narcotics dog of the exterior of a vehicle during a lawful traffic stop does not trigger Fourth Amendment protection. *State v. Cruz*, 12th Dist. Butler No. CA2013-10-008, 2014-Ohio-4280, ¶ 15. If a trained narcotics dog "alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband." *Id.* "Police are not required to have reasonable suspicion that a vehicle contains drugs prior to conducting a canine sniff of the vehicle during a traffic stop, so long as the duration of the traffic stop is not extended beyond what is reasonably necessary to resolve the issue that led to the stop and issue a traffic citation."

*Blatchford* at ¶ 28. However, if the traffic stop is extended in order to allow a drug-sniffing dog to be brought to the scene, police must have a reasonable suspicion that the vehicle contains drugs in order to justify the continued detention. *Id.*

{¶ 20} Officer Kellum was permitted to effect a traffic stop after observing appellant driving a vehicle at night with its headlights off. It is undisputed that operating a vehicle at night without activating its headlights constitutes a traffic violation, thereby giving a police officer probable cause to initiate a traffic stop. *State v. Jones*, 121 Ohio St.3d 103, 2009-Ohio-316 ¶ 19, fn. 3; *State v. Dunn*, 8th Dist. Cuyahoga No. 92030, 2009-Ohio-3737, ¶ 5. The traffic stop was therefore proper.

{¶ 21} The traffic stop was initiated at 2:08 a.m. As stated above, Sergeant Wolfe was the one who radioed Officer Larsh and his canine unit to the scene. The record shows that Officer Larsh and Scout arrived on the scene at 2:24 a.m., Officer Larsh conducted a canine sniff of the vehicle at 2:31 a.m., and Scout alerted to the trunk of the vehicle less than one minute later. During the 23-minute time frame between the traffic stop and the canine sniff, Officer Kellum first had to physically apprehend appellant who was walking away from the vehicle, thereby providing the officer additional probable cause to detain appellant for failure to comply with the order or signal of a police officer. During the investigation of the traffic stop, Officer Kellum learned that appellant did not own the vehicle and that his driver's license was suspended. This required the officer to determine who had permission to drive the vehicle, thereby prompting two separate calls to appellant's parents, and the reason for appellant's suspended driver's license. Given appellant's traffic violation and the fact appellant was walking towards the pool hall, Officer Kellum further administered a field sobriety test to determine whether appellant was operating the vehicle under the influence of alcohol. As the trial court noted, the recording shows that appellant did not follow the officer's commands "very efficiently" during the field sobriety test. Subsequently,

appellant's insistence that the vehicle be turned over to his girlfriend required Officer Kellum to send Sergeant Wolfe to Rick's Tavern to locate and speak with the girlfriend. All these various investigations required time. Officer Kellum was in the process of writing citations when Scout alerted on the vehicle and drugs were subsequently discovered.

{¶ 22} This court has previously found that an up to 42-minute period of detainment from the time of an initial stop to the time a canine alerts is reasonable. *See State v. Beltran*, 12th Dist. Preble No. CA2004-11-015, 2005-Ohio-4194 (canine sniff 42 minutes after traffic stop was not unconstitutional); *State v. Bolden* 12th Dist. Preble No. CA2003-03-007, 2004-Ohio-184 (canine sniff 23 minutes after traffic stop was not unconstitutional); and *Cochran*, 2007-Ohio-3353 (canine sniff 28 minutes after traffic stop was not unconstitutional).

{¶ 23} In light of the totality of the circumstances, we find no evidence suggesting that appellant was unconstitutionally detained to provide time for the canine sniff of the vehicle he was driving. *See Rodriguez,* 575 U.S. 348. The initial traffic stop was based upon probable cause that appellant was violating R.C. 4513.03(A)(1) by operating a motor vehicle between the hours of sunset and sunrise with its headlights off. After the traffic stop, appellant walked away from and failed to comply with Officer Kellum's commands, providing the officer additional probable cause to detain appellant for failure to comply with the order or signal of a police officer pursuant to R.C. 2921.331(A). During the initial stages of the investigation, Officer Kellum discovered that appellant had been driving while under suspension. The driving under suspension offense is a first-degree misdemeanor for which Officer Kellum had probable cause to arrest appellant without a warrant pursuant to R.C. 2935.03(A). Finally, because appellant's driver's license was suspended, he would not have been permitted to drive the vehicle away from the scene. The vehicle would have remained at the scene until towed or relinquished to appellant's girlfriend or parents, none of which occurred in the time prior to the canine sniff. There is no evidence indicating that

any of the officers were not diligent and timely in the exercise of their duties. These circumstances establish that appellant was not detained beyond what was constitutionally permissible under the Fourth Amendment.

{¶ 24} Given the record before us, we find that appellant was not detained for longer than necessary to investigate his driving a vehicle at night with its headlights off, and that appellant was not detained longer than constitutionally permitted. The trial court, therefore, properly denied appellant's motion to suppress evidence seized during the search of the vehicle.

{¶ 25} Appellant's first assignment of error is overruled.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE TRIAL COURT ERRED IN FAILING TO RULE ON APPELLANT['S] MOTION TO SUPPRESS IN ITS ENTIRETY.

{¶ 28} Appellant argues the trial court failed to rule upon his motion to suppress in its entirety in violation of Crim.R. 12(F) because the court did not rule on that portion of his motion seeking to suppress his statements.

{¶ 29} Pursuant to Crim.R. 12(F), a motion to suppress "shall be determined before trial." A trial court's failure to rule upon a motion to suppress prior to trial constitutes error. *Blatchford*, 2016-Ohio-8456 at ¶ 51. However, such error is harmless "'unless it adversely affects the substantial rights of the defendant.'" *Id.*, quoting *State v. Tolbert*, 70 Ohio App.3d 372, 388 (1st Dist.1990).

{¶ 30} As stated above, appellant moved to suppress all evidence obtained from the search of the vehicle as well as any statements he had made. The majority of the motion focused on whether appellant's detention and the search of the vehicle violated his rights under the United States and Ohio Constitutions. By contrast, the motion summarily argued that appellant's statements were unconstitutional "[s]ince the search of [the] motor vehicle

was unconstitutional," and simply cited *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966) in support.

{¶ 31} During the suppression hearing, testimony as to whether and when appellant was given his *Miranda* rights was brief. Officer Kellum testified that following the search of the vehicle and discovery of the drugs, he advised appellant of his *Miranda* rights, at which point appellant admitted the drugs were his. Sergeant Wolfe testified that "at one point in time," he talked to appellant about the officer's "different assignments [as well as] the narcotics trade, [appellant's] involvement, and things like that. He did tell me that it was cocaine in the bag, and * * * it was his." Asked whether this exchange occurred before or after appellant was given his *Miranda* rights, Sergeant Wolfe replied, "I believe it was after Ofc. Kellum had already Mirandized [appellant]." Sergeant Wolfe did not testify whether he advised appellant of his *Miranda* rights.

{¶ 32} At the close of the suppression hearing, defense counsel argued for the suppression of the drugs on the grounds that Officer Kellum lacked reasonable suspicion to detain appellant until the canine unit arrived and that the traffic stop was unreasonably delayed in order to conduct a canine sniff of the vehicle. Defense counsel never argued for the suppression of appellant's statements or that appellant was not properly advised of his *Miranda* rights when he admitted ownership of the drugs to Sergeant Wolfe.

{¶ 33} Following the parties' closing arguments, the trial court denied appellant's motion to suppress the evidence. On September 25, 2018, the trial court issued an order denying appellant's motion to suppress as follows:

> This matter came before the Court, on September 20, 2018, upon Defendant's Motion to Suppress. After due consideration thereof, the Court finds that said motion is not well taken, for reasons stated on record.
>
> It is, THEREFORE, ORDERED, ADJUDGED AND DECREED that Defendant's Motion to Suppress is thereby denied.

- 10 -

{¶ 34} Although the trial court's order denying the motion to suppress does not specifically relate to physical evidence or appellant's statements, it unequivocally denies the motion to suppress in its entirety. Furthermore, we have held that when a trial court fails to rule on a particular argument raised in a motion to suppress, we presume the trial court rejected the argument and therefore denied the motion to suppress regarding the particular argument. *State v. Young*, 12th Dist. Clermont No. CA2005-08-074, 2006-Ohio-1784, ¶ 15; *State v. Lally*, 12th Dist. Clermont No. CA96-04-039, 1996 Ohio App. LEXIS 3894, *2 (Sep. 9, 1996), fn. 1. *See also State v. Ervin*, 12th Dist. Butler No. CA2017-06-084, 2018-Ohio-1359; *State v. Gomez*, 9th Dist. Lorain No. 13CA010389, 2014-Ohio-3535.

{¶ 35} Furthermore, the audio/video recording of the traffic stop shows that Officer Kellum advised appellant of his *Miranda* rights at 2:53 a.m., at which point appellant admitted the drugs were his. The recording further shows Sergeant Wolfe speaking with appellant about the officer's different assignments, the narcotics trade, and appellant's involvement at 3:02 a.m., several minutes after appellant was advised of his *Miranda* rights. Based on the foregoing, we find that appellant's substantial rights were not adversely affected by the trial court's failure to specifically rule on that portion of his motion seeking to suppress his statements. Thus, even if the trial court's failure to specifically deny the portion of appellant's motion to suppress relating to his statements was error, it is harmless error.

{¶ 36} Appellant's second assignment of error is overruled.

{¶ 37} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.