[Cite as *State v. Moody*, 2020-Ohio-3899.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28390 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-904 |
| | : | |
| JEREMY L. MOODY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 31st day of July, 2020.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

SEAN BRINKMAN, Atty. Reg. No. 0088253, 10 West Monument Avenue, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant Jeremy L. Moody appeals from his conviction, following a no-contest plea, for aggravated possession of drugs. Moody contends the trial court erred by denying his motion to suppress evidence he claims was obtained as a result of an unlawful search and seizure.

{¶ 2} Based upon our review of the transcript of the suppression hearing, we conclude the trial court did not err in finding that the evidence was obtained as a result of a lawful inventory search. Accordingly, the judgment of the trial court is affirmed.

## I.      Facts and Procedural History

{¶ 3} On March 4, 2017, at approximately 2:00 a.m., Dayton Police Officers Brittany Brown and Clinton Evans were on routine patrol driving on West Riverview Avenue. As their cruiser approached the intersection with Main Street, they pulled behind a vehicle that was stopped despite having a green traffic light. The officers noted the vehicle's brake lights were engaged. The vehicle remained stationary through an entire cycle of the traffic light despite the fact that Brown honked the horn of the cruiser. After activating the cruiser's overhead lights, the officers approached the vehicle.

{¶ 4} The officers observed one person, subsequently identified as Moody, in the vehicle. Moody, who was in the driver's seat, appeared to be unconscious and limp. Moody's hands were not on the steering wheel, his head was leaned back on the headrest, his eyes were closed and his mouth was open. A small black plastic bag was on Moody's lap.

{¶ 5} Officer Evans spoke to Moody through the window but was unable to get a response. Evans then attempted to open the car door, but it was locked. Evans used

his flashlight to tap on the window, at which point Moody opened his eyes. Moody put the car into park, opened his door and grabbed the bag. Evans grabbed Moody's arm and ordered him to release the bag. Because he did not know what the bag contained, Evans took the bag. As he got out of his car, Moody informed the officers that he had smoked marijuana. The officers learned that Moody did not have a valid driver's license.

{¶ 6} Because Moody lacked a driver's license, the officers decided to have his vehicle towed. Prior to the tow, Evans conducted an inventory search of the contents of the car, during which he found marijuana, money and a digital scale. The black plastic bag that had been in Moody's lap was included in the inventory search. The bag contained methamphetamine. Moody was arrested and read his rights. He then declined to speak to the officers.

{¶ 7} Moody was indicted on one count of aggravated possession of drugs (methamphetamine) in an amount greater than five times bulk but less than 50 times bulk and one count of possession of marijuana. Moody filed a motion to suppress evidence in which he argued that his vehicle had been illegally searched. The trial court conducted a hearing on the motion; the State presented the testimony of Evans, the cruiser camera's video recording of the events, and a copy of the Dayton Police Department tow policy.

{¶ 8} In addition to the facts cited above, Evans testified he was able to smell the "extremely strong odor of marijuana coming from inside the vehicle" after Moody opened the car door. Supp. Tr. p. 23. Evans testified that after Moody exited the car, he and Brown did not believe Moody to be impaired despite his admission that he had smoked marijuana. Evans also testified that he grabbed the black bag from Moody because he did not know what the bag contained. Evans testified that, as soon as he touched the

bag, he recognized the contents as methamphetamine; his assessment was based upon his training and experience as to the consistency of methamphetamine. Evans testified he had touched methamphetamines 50 to 60 times in his career He also testified that he and Brown decided to have the car towed pursuant to the Dayton Police Department tow policy after learning that Moody did not have a driver's license.

{¶ 9} In its oral ruling denying the motion to suppress, the trial court made the following findings of fact:

> There's a couple of issues I want to indicate. First of all, the vehicle was properly towed pursuant to the tow policy of the City of Dayton. The defendant had no driver's license. I mentioned previously he was under arrest. They were not going to arrest him for not having a license, but the tow policy provided for the tow of that vehicle.
>
> In addition, with regard to the stop, the Court finds that the officers had probable cause to believe that the vehicle had engaged in some traffic violation for impeding the roadway.
>
> But also, the officer's community caretaker responsibilities require that they inquire [into] what was going on in that vehicle given that it sat through those lights. And there was no stop of the vehicle because it was already stopped. The officers merely approached the vehicle, and when they saw what was going on, their community caretaker function overtook to see what was going on.
>
> And then, again, when the defendant acknowledges that he does not have a driver's license, that creates probable cause that an offense has

occurred. So there's no violation of the defendant's Fourth Amendment rights.

Further, with regard to the tow policy, the defendant, in the motion to suppress, challenged whether the tow policy – or excuse me, challenged the fact that the officer touched the bag prior to the time the officers learned the defendant did not have a valid driver's license, that drugs would have been inevitably discovered as a result of the tow policy. So the Court finds there's no violation of the defendant's Fourth or Fifth Amendment rights.

I do want to make one other note for the record. The officer indicated that he had, on countless times, he said 50 to 60 times, touched methamphetamines, which served as the basis for him immediately understanding that the black bag contained meth.

Suppression Decision Tr., p. 12-14.

{¶ 10} Following the denial of his motion to suppress, Moody entered a plea of no contest to the charge, was found guilty, and was sentenced accordingly. Moody filed a timely notice of appeal.


## II.  Motion to Suppress

{¶ 11} Moody's sole assignment of error states:

THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS.

{¶ 12} Moody argues that the trial court erred in overruling his motion to suppress. He states:

[T]he initial stop of the vehicle was reasonable as the officers had a

reasonable suspicion of a traffic violation as the vehicle remained stopped at a green light. However, Officer Evans lacked reasonable suspicion that a weapon was in the vehicle necessary to search inside of the vehicle. Officer Evans did not have a reasonable belief that the black bag contained a weapon because he had no idea what was inside of the bag before grabbing it. Officer Evans also lacked probable cause that a criminal offense occurred. Officer Evans could not determine what was inside of the bag only by looking at it.

{¶ 13} Appellate "review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. As the trier of fact, a trial court "is in the best position to weigh * * * evidence * * * and evaluate [the credibility of] witness[es]," so an "appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 9, citing *State v. Cruz*, 12th Dist. Preble No. CA2013-10-008, 2014-Ohio-4280, ¶ 12. Accepting the trial court's findings of fact as true, "the appellate court must then independently determine, without deference to the [trial court's legal] conclusion[s]," whether the "facts satisfy the applicable * * * standard." (Citations omitted.) *Burnside* at ¶ 8.

{¶ 14} The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. *State v. Klase*, 2019-Ohio-3392, 131 N.E.3d 1054, ¶ 18 (2d Dist.). "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). Subject

to specific exceptions, warrantless searches are per se unreasonable. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The State bears the burden of establishing that a warrantless search is reasonable under one or more exceptions to the Fourth Amendment's warrant requirement. *Xenia v. Wallace*, 37 Ohio St.3d 216, 524 N.E.2d 889 (1988), paragraph two of the syllabus.

{¶ 15} One exception to the warrant requirement is the inventory search. *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *State v. Mesa*, 87 Ohio St.3d 105, 108, 717 N.E.2d 329 (1999). Under this exception, when a vehicle is impounded, police are permitted to follow a routine practice of administrative procedures for securing and inventorying the vehicle's contents. *Opperman* at 369. Inventory searches are intended to: (1) protect an individual's property while it is in police custody; (2) protect police against claims of lost, stolen or vandalized property; and (3) protect police from dangerous instrumentalities. *Id.* The rationale for excluding inventory searches from the warrant requirement is that inventory searches are an administrative or caretaking function, rather than an investigative function. *Id.* at 369, fn. 5. "An inventory search * * * of a lawfully impounded vehicle does not contravene the Fourth Amendment to the United States Constitution or Section 14, Article I of the Ohio Constitution where the search is administered in good faith and in accordance with reasonable police procedure(s) or established routine." *Mesa* at syllabus, citing *State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743 (1992).

{¶ 16} Here, the officers did not initiate a traffic stop of Moody's vehicle as it was already stopped in the roadway. The unrefuted evidence showed Moody's vehicle sat

through an entire cycle of the traffic light and did not move even after the officers honked the cruiser's horn. Upon investigation, the officers observed that Moody appeared to be unconscious in the driver's seat. He did not respond to the officers until Evans used his flashlight to tap on the car window. Moody does not claim the officers lacked a reasonable basis for investigating his stopped vehicle or subsequently asking him to exit the car.

{¶ 17} Moody also does not claim that the Dayton Police Department tow policy, which provides for towing vehicles operated by individuals who do not have valid driver's licenses, is invalid. There was unrefuted testimony and evidence presented that the inventory was done in accordance with established procedures set by the Dayton Police Department.

{¶ 18} As an aside, though not raised at the suppression hearing, we note the mere fact that Officer Evans smelled the odor of marijuana emanating from the vehicle was sufficient to support a search of the vehicle and its contents. *State v. Moore*, 90 Ohio St.3d 47, 734 N.E.2d 804 (2000); *State v. Arnold*, 2d Dist. Clark No. 2001-CA-55, 2002 WL 538836, *3 (Apr. 12, 2002).

{¶ 19} Based upon Evans's testimony, which the trial court found credible, the trial court reasonably concluded that the seizure of the methamphetamine was justified under the inventory search exception to the warrant requirement. Accordingly, Moody's assignment of error is overruled.

### III.    Conclusion

{¶ 20} Moody's assignment of error being overruled, the judgment of the trial court

is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Sean Brinkman
Hon. Mary Katherine Huffman